May it please the Court. We have articulated several reasons in our briefs why we believe the Grant of Summary Judgment should be reversed. I'd like to start in a little bit different order with the Accounts Stated claim. Under Illinois law, an Accounts Stated arises when one party renders to another a statement of account and the latter party acquiesces in that statement of account by failing to object to it within a reasonable time. That, we submit, is what happened here. The evidence shows... After how long of silence? So we think the evidence drawing all reasonable inferences in our favor would show about 18 months of silence. No, no, no. Silence since the last statement request for payment. About 15 years? Oh, that is true. Okay, so if I send you a bill and say, Mr. Sciretta, you owe me $5,000 based on our transactions that occurred 15 years ago, and you remain silent because the debt is clearly barred by the statute of limitations, your theory is that I could sue you on an Accounts Stated theory because you acquiesced by failing to object. Is that right? Yes, that is our theory. You've got to be kidding. No, no, I'm not kidding. I think that that is a... I'll send you a bill. We'll see what happens. And I take it what will happen is that debt collectors trying to collect $500 time-barred bills will just send a blizzard of new $500 bills, which will be ignored, and voila, the statute of limitations is gone. Well, it may be that the statute of limitations will not be gone because that, I think... You know, we have a rule in this circuit that you can't send... you can't dun people for time-barred debts. But on this view, if somebody doesn't respond to a dunning letter, the debt isn't time-barred, then there will be no such thing as time-barred debts. There will be only dunning letters. I think there still will be time-barred debts because, first of all, people will object when they receive a time-barred debt. But if they don't? Well, if they don't, there ought to be, I think, the fact finder ought to sort out whether there was a meeting of the minds. And that's really all that... Do you have another theory you want to share with us? Sure. Even if the court disagreed with us on the account-stated claim, at the very least we think that the claims that were first billed in 2008, that summary judgment was not appropriately granted on those first-billed claims. The July 31, 2008 billings included some set that was admittedly not time-barred, that Bonko acknowledged in the summary judgment papers below was not subject to any time-barred. Now, what Bonko said was that, well, we think that there is nothing due and owing on the claims first billed in July of 2008. Because? Wasn't the liquidator in possession of certain assets or deposits for the benefit of the bank? Well, that's correct. So the collateral was applied to those new claims, right? I think, again, there are questions of fact on where the collateral was applied. So is it your theory? Who makes that decision? The liquidator makes it in the first instance, and Pinetown Proceedables accedes to that as the successor. Does the liquidator make such an assignment? The liquidator, I don't think the statement of account conclusively shows either way. Would the liquidator have, I'm trying to think, and I'm willing to be educated about this, but I'm trying to think on what good faith basis the liquidator could say, we've got this collateral, we've got this series of claims. Some are clearly time-barred, way too late to pursue them. We threatened litigation back in the 90s and then dropped the matter. So I'm going to apply the collateral to those time-barred claims and try to grab fresh cash for the new claims. That's your theory? Yes, and can I give you? How on earth? Go ahead. It's not a very coherent question. Can I give you two good faith bases? The first, in these reinsurance treaties, and you can find one example at 1387 of the record, the quota share and first surplus. It says when the reinsurer fails to fulfill its obligations, that the collateral, the amounts that are being held, automatically becomes the property of Pinetop and its successor. So that's one basis. That's one basis why you would apply it to the old. The second, and we cite some cases on this in our briefs, the statute of limitations is a rule that bars lawsuits. It is not a rule that bars other remedies, other debt collection remedies. And so here, applying to the old time-barred debt would be legitimate, and it would be in good faith for at least those two reasons, Your Honor. I do want to address, since I'm on the funds withheld, there was the point made by the district court that this was not sufficiently developed. The funds withheld claim was not sufficiently developed. I don't think that's right for this reason. The opening brief in support of summary judgment had a footnote that said, the claims that were newly billed on July 31, 2008, are not time-barred, but there's nothing due and owing on them. And in response, Pinetop receivables had point heading four, few paragraphs of argument, and it explained in reasonable detail why that was not true, and why the newly billed claims do have balances owed because the collateral should be applied to the older debt. So I do think that it would be a rather harsh forfeiture rule to say that this funds withheld argument is not properly before the courts when the moving party on summary judgment introduces it in a footnote. Pinetop receivables responds in at least a few paragraphs in its opposing brief. Unless the court has further questions on the funds withheld, I do want to briefly go to our other argument in the brief, which is the Illinois insolvency set-off statute. And I think the proper way to frame the effect of the Illinois insolvency set-off statute in this case is as follows. It's not that it's a statute of limitations rule. It's not that it's something that is primarily concerned with the statute of limitations. But what it is is a contract altering rule because it says the mutual debts and credits have to be sorted out, and then the balance shall be paid, and then what will be paid will be on the balance only in mandatory language. So as was often the case in insolvency and in liquidation, what that statute is saying is you need to alter the normal contract rules, the quarterly account billing paid by the end of the next quarter. That alters, and you have to wait. Nothing can be paid until the mutual debts and credits are set off. Do you think that begins a new time? I think it prevents the time from ever starting, because the breach doesn't occur until after the process of settling mutual debts and credits is complete. So what do we make of the fact that the liquidator was kicking up a fuss and threatening litigation back in 93 or 94? You didn't follow through and just sold these debts to you guys on, what was it, about 3 cents on the dollar? That's close. But to answer your question directly, what is the effect of that? I think I would have to say that's probably going to be admissible under an exception to the rule against, say, a party opponent or our predecessor. That could be something that might be inconsistent with our idea. I understood you to be claiming, though, that there's a well-understood practice within reinsurance along these lines so that the normal rules don't apply, but it was so well understood that the liquidator didn't understand it. That's what it sounds like. Sure. There was custom and practice evidence, and I will concede that the liquidator's conduct should go into the balance. And if we can have a trial, we can determine what the better view of the custom and practice was. But the fundamental point here, I think, is that this Illinois insolvency set-off statute has to have some meaning. It ought to mean something. And if it doesn't delay the quarterly account billing provisions of the contract, I don't know what's left of it. Well, one thing that's left of it is simply that all bills have to be nets. That's true. All bills will have to be nets. Has the Illinois judiciary ever said that under that statute, all bills must be netted at the very tail end of a receivership? No. There is no Illinois case law on that, but I don't think there's any Illinois case law on that either way. There's very little case law. I'm sorry. You're on. Of course, if you wanted some innovation in Illinois case law, then maybe this belonged in Illinois. Well, fair enough, but it's here, and this court is capable of interpreting Illinois law on a question that the Illinois courts have not reached. That brings me to another point on this argument, which is it was a reason given below that we didn't cite any case law that had accepted this approach, that that was a forfeiture. But there's not a lot of case law either way. These insolvency situations do not appear to arise all that frequently where the particular statute of limitations issue that we are arguing here comes up. So it's true there was no specific case cited that has adopted this interpretation of the Illinois insolvency set-off statute, but it's not like there was a wealth of authority interpreting this or a lot of other insolvency set-off statutes that went the other way. Unless the court has further questions, I'll reserve for rebuttal. Certainly, counsel. Thank you. Mr. Doan. Good morning. May it please the court. This case concerns an issue where every dollar at issue was incurred 18 to 30 years ago. Every dollar at issue was billed 18 to 30 years ago. Every dollar at issue was due and payable 18 to 30 years ago. So what do we do with this argument about things first billed in July of 2008? The first bill in July of 2008. From 1993 to 1999, runoff procedures were still going on. That bill reflects those credits and debits during that 15-year period. What we know is that the liquidator assessed the set-off on that number. Pinetop, our plaintiff, purchased the assets as is. When was that? 2010, November. Thank you. So what that reflects is that the actual set-off being done was done on the 93 through 99 billings. They then sold that asset for $0.03 on the dollar. Meanwhile, Pinetop actually knew that these claims were time-barred. The liquidator, after due diligence, told them that these claims were time-barred and that Banco objected to the claims. Now with respect to this accounts dated claim, the record is very, very clear that it wasn't pled. And moreover, for accounts dated to be had, there has to be an agreement on the number that is due and owing. We have five different, ten different iterations of what is due and owing. From 1993, 94, 95, 2000, 2010. The complaint, the discovery. We don't even have one single number that would support accounts dated claim. It's all different. And under Illinois law, that's incorrect. Now with respect to the idea that the set-off provision allows these types of claims to be perpetuated in an infinitum, it doesn't provide that. Nothing in the insurance code says, hey, the set-off provision voids all statute of limitations. You know what? The insurance code actually has a statute of limitations. It says the liquidator can bring claims two years if not otherwise time barred. So it's actually shortening the liquidator's ability to bring claims. With that, there cannot be this long tail, there's no statute of limitations for these types of claims. Moreover, the mere fact that this reinsurance position or the reinsurance, you see it when the liquidation, does not affect how the parties treated the terms of the treaties. We know the liquidator standing in the shoes of Pintop issued quarterly billings from 91 through 93. We know that the terms of the treaties contemplate insolvency. There's nothing in either the treaties, the conduct of the party, or statutory law, or case law for that matter, that would change the relationship. When the sedent goes into liquidation, the liquidator takes over and proceeds to do business and wind up the sedent's affairs. I really wanted to note, just for the record, that at page one of the reply brief, plaintiff takes some issues with what we responded to with respect to the insolvency provision. That's addressed at our brief in pages 33 to 36. Judge Aspen was correct in dismissing this complaint. We've got claims that were due and owing 18 to 30 years ago. The statute of limitations for breach of contracts, five years. If you wanted to take any one of those demands from the liquidator for accounts, you could say one of those are account stated. That would be five years from that. We've got those demands in 93 and 95. So they'd still have five years, even on their account stated theory, for the pre-93 billings. This place is time barred. And I respectfully ask that you affirm the first report. Thank you. Thank you, Mr. Dunn. Anything further, Mr. Serrato? Just a couple of brief points, Your Honor. On the funds withheld, the newly billed claims in 2008, the July 31, 2008 billing, I think it's best looked at as just a kind of update. What has happened since the last bill? There have been premiums that have been credited. There have been claims that have come in. And it's saying all of the things that have happened since we sent you a previous bill. It is not, and certainly is not conclusively as a matter of law on summary judgment, a definitive statement of which of the claims the collateral has been applied to. And I did not hear in my colleague's argument any dispute that the treaties, if we look at the treaties, and I cited 1387 in the record as an example, that the funds became the property of Pinetop when Bonko failed to fulfill its obligations. So that is a strong evidence that these newly billed claims still have some balances owing on them. The newly billed claims, right? Is your colleague correct that they're based on activities that ended in 1999? That's right. The 93 to 99 period is what they claim. So under your view, those amounts were due and owing in 1999. Right. But there is no dispute, at least for purposes of summary judgment, this was in the summary judgment papers below, that any claims first billed in 2008 are timely. And I think that's because the accrual is upon the billing. So your theory is that the creditor can sit on the claim, the money is owing, but I'm not going to bill it until nine or ten years after it's owing. Well, so I would just dispute the premise of sitting on it, because there was a lot happening in that time period as we lay out in our briefs, working out the higher priority claims to what we call the direct claims in our brief, and before the liquidator could get to the retrocessional claims. But accepting that, yes, the claims being first billed, as is stated in a footnote in the summary judgment papers, I think it might be at 1687 of the record, that footnote acknowledges, I think Bonko acknowledges, and it has not been disputed here, that those first billed claims from July of 2008 were timely, and there was no statute of limitations claim made as to those claims. The claim, rather, was that there was just no evidence, that the evidence was conclusive and was sufficient for summary judgment, that there was no balances due on those funds withheld. And we just think that's not the case based on the treaties, one, and based on the well-settled law that the creditor has a right to use other remedies to collect even time-barred debts, the statute of limitations, bars, lawsuits. I see my time is short. I would just say on the account-stated claim, I know the court has expressed some skepticism on it, but Illinois law does recognize that when you have an account-stated, it's an independent agreement. It's a new agreement. It arises as a separate… Exactly. It's an agreement. What you have is a document was transmitted and put in the circular file. How is that an agreement? Well, I think what the Illinois cases say is that acquiescence for a long period of time raises an inference of a meeting of the minds. Yeah. Well, okay. I'll prepare myself. You're going to get Judge Hamilton's statement for judicial services. In fact, everyone in this courtroom will be getting a statement from Judge Hamilton. You'd all better respond or you've agreed to pay him. I see my time has expired. Thank you. Okay. Thank you very much. The case is under advisement.